**In the**
**UNITED STATES DISTRICT COURT**
**for the SOUTHERN DISTRICT OF INDIANA,**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **JOYCE A. DORA**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| *vs.* | )     **CAUSE NO. 1:08-cv-387-SEB-TAB** |
| | ) |
| **MICHAEL J. ASTRUE**, Commissioner of | ) |
| the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**E N T R Y**

By this suit, Plaintiff Joyce A. Dora intends to either appeal the denial of her November 2004 application for disability benefits or appeal the April 2004 termination of disability payments that she was receiving as a result of her March 1998 application.  Perhaps she intends both; it is difficult to tell.  The basis for confusion, and hers, will soon become apparent.  Regardless of her intentions, however, her lawsuit fails.

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i), 423(d)(1)(A), and 1382(a)(3)(A).  A person will be deemed disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).  The combined effect of all

1

of a claimant's impairments is to be considered throughout the disability determination process. 42 USC §§ 423(d)(2)(B) and 1382a(a)(3)(G).

The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. §§ 404.1520 and 416.924. If disability status can be established at any step in the sequence, an application will not be reviewed further. *Id.* At the first step, if the claimant is currently engaged in substantial gainful activity, then he is not disabled. At the second step, if the claimant's impairments are not severe, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and  416.924(c). Third, if the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the claimant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling. 20 C.F.R. § 404.1525. If the claimant's impairments do not satisfy a Listing, then his residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. §§ 404.1545 and 416.945. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. Fifth, considering the claimant's age, work experience, and education (which are not considered at step four), and his RFC, he will not be determined to be disabled if he can perform any other work in the relevant economy.

The burden rests on the claimant to establish steps one through four.  The burden then shifts to the Commissioner at step five to establish that there are jobs that the claimant can perform in the national economy.  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).  If a claimant has only exertional limitations, the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"),  may be used at step five to arrive at a disability determination.  The grids are tables that correlate a claimant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled.  20 C.F.R. §§ 404.1569 and 1569a.  If a claimant has non-exertional limitations or exertional limitations that restrict the full range of employment opportunities at his RFC level, then the grids may not be used and a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the claimant's particular vocational and medical characteristics.  *Id.*; *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993).  The grids result, however, may still be used as an advisory guideline in such cases.  20 C.F.R. § 404.1569.

A recipient's disability benefits may be terminated  if "the physical or mental impairments on the basis of which such benefits are provided has ceased, does not exist, or is not disabling . . . ."  42 U.S.C. §§ 423(f) and 1382c(a)(4).  The Social Security Act requires SSA to periodically review the continued eligibility of disability insurance benefits ("DIB") recipients, 42 U.S.C. § 421(i), and the SSA has promulgated regulations providing for periodic eligibility reviews of both DIB and supplemental security income ("SSI") recipients,[1] 20 C.F.R. §§

---

[1] In general, two types of disability benefits are available under the Social Security Act: disability insurance benefits, or "DIB," for individuals who have achieved insured status through employment and contributions, 42 U.S.C. § 423, *et seq.*, and supplemental security income benefits, or "SSI," for uninsured individuals who meet low-income and limited-resources

404.1589, 404.1590, 416.989, and 416.990.

An application for benefits, together with any evidence submitted by the applicant or obtained by the agency, undergoes initial review by a disability examiner and a physician or medical specialist.  If denied, the claimant may request reconsideration review, which is conducted by a different examiner and medical professional.  If denied again, the claimant may request a hearing before an administrative law judge ("ALJ").[2]  A claimant who is dissatisfied with the decision of the ALJ may request the national Appeals Council to review the decision.  If the Appeals Council either declines to review or affirms the decision, then the claimant may file an action in district court for judicial review.  42 U.S.C. § 405(g).  If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

### Procedural history

Ms. Dora was born in May 1959 and has achieved a high-school education.  She had previous relevant work as a bookkeeper, sales clerk, and cashier.

**First application.**  In March 1998, Ms. Dora filed an application for DIB benefits. (R. 166).  After her application was denied on initial, (R. 58, 101), and reconsideration review, (R.

---

criteria, 42 U.S.C. § 1381, *et seq.*  The disability standard is virtually the same under both programs.  42 U.S.C. §§ 416(i), 423(d), and 1382c(a)(3).

[2] Initial and reconsideration reviews in Indiana are performed by an agency of the state government — the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration — under arrangement with the Social Security Administration.  20 C.F.R. Part 404, Subpart Q (§ 404.1601 *et seq.*).  Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

59, 107), she requested and received a hearing before an ALJ ("ALJ1"), (R. 111, 64, 78).  ALJ1

granted Ms. Dora's application for DIB benefits in March 1999, (R. 60, 68, 74, 82), when she

was 39 years old.  ALJ1 found that she had the following impairments that were severe in

combination:  dilated cardiomyopathy[3] with chronic heart failure and tachycardia[4] at rest; severe

left ventricular systolic dysfunction[5] with ejection fraction[6] estimated at 15%; mild to moderate

---

[3] "A disease of the myocardium, muscular wall of the heart, of unknown cause, marked
by a dilation of all four chambers, the two atria and two ventricles.  Although the cause is
unknown, four factors are suspected:  (1) Chronic alcoholism; (2) a nutritional deficiency
associated with pregnancy; (3) genetic defect; and (4) a virus infection."  J. E. Schmidt,
*Attorney's Dictionary of Medicine and Word Finder* at D-138 (Dec. 2005).

[4] "An abnormally rapid beating of the heart.  A rate faster than 100 beats per minute is
regarded as tachycardia."  *Attorney's Dictionary* at T-6.

[5] "Impairment of the function of a heart ventricle (lower chamber) in its contraction
during systole.  The incomplete contraction means incomplete emptying, i.e., some blood
remains in the ventricle when it begins to relax and draw in a new load of blood.  The
consequence of this impairment is a deficiency of blood for the organs and tissues and a
congestion of blood in the lung."  *Attorney's Dictionary* at S-457.  Systole is "[t]he contraction
of the heart, specifically the contraction of the two lower chambers, the ventricles, as
distinguished from the two upper chambers, the atria.  The contraction of the left ventricle drives
the blood into the arteries of the body.  The contraction of the right ventricle propels the blood
into the lungs."  *Id.*

[6] "The proportion of the blood contained in the ventricle (lower chamber) of the heart at
the end of diastole (the relaxation period between contractions) that is expelled into the
circulation during the next contraction or systole.  It is decreased in congestive heart failure."
*Attorney's Dictionary* at S-457 to -458.

left ventricular dilation[7] with global hypokinesis;[8] mild to moderate mitral valve regurgitation;[9] obesity; atypical chest pain; cigarette smoking; and early menopause.  (R. 65, 79).  ALJ1 assumed that Ms. Dora did not meet any of the criteria in the Listings of Impairments but noted that, with her ejection fraction of 15% and marked limitation in physical activity, "it would seem the claimant's condition meets the requirements set out in Appendix 1, Section 4.04(B)."[10]  (*Id.*) He found that her descriptions of the extent of her symptoms and functional limitations were credible, (R. 66, 80), and found insufficient evidence that medication alleviated her condition to the extent that she could sustain work for eight hours per day, five days per week, (R. 66-67, 80-81).  Regarding her RFC, he found that "[t]he claimant does not have the residual functional capacity to perform the physical exertion requirements of work, including lifting, carrying, standing, walking, sitting, pushing, or pulling on a sustained basis," (R. 67, 81), and that her RFC for the full range of work was reduced by exertional limitations," (*id.*).[11]  At step four, he

---

[7] "A condition in which the muscle fibers of the myocardium (heart muscle) are elongated, thereby increasing the capacity of the ventricle."  *Attorney's Dictionary* at V-76 to -77.

[8] "Diminished movement or mobility; decreased muscular movement."  *Attorney's Dictionary* at H-269.

[9] "An abnormal backward flow of blood from the left ventricle into the left atrium (auricle), due to a defect in the mitral valve which controls the opening that separates the two chambers.  Normally, the valve allows the blood to flow only in one direction, from the atrium to the ventricle.  . . .  [W]hen the mitral valve is defective, some of the blood flows back into the atrium, thus reducing the amount of blood expelled in the aorta and in the general circulation."  *Attorney's Dictionary*, at —233 and —231.

[10] It appears likely that ALJ1 intended to refer to Listing 4.02(B), rather than 4.04(B).

[11] While a bit unclear, it appears that ALJ1 found that Ms. Dora did not have the RFC to perform even at the sedentary level but discussed her significant limitations for performing at the sedentary level as an alternative rationale.

found that she could not perform her past relevant work.  (*Id.*)  Finally, at step five, he found that, because her ability to perform the full range of work at the sedentary level was "significantly compromised," and considering her age and education,[12] she was disabled within the framework of grid rule 201.00(h).  (R. 68, 82).  He concluded that Ms. Dora was entitled to DIB benefits commencing May 15, 1997, (*id.*), and she began receiving benefit payments.

**Termination of benefits.**  In February 2002, SSA notified Ms. Dora that it was commencing a review of her continued eligibility to receive benefits and it requested additional information about her current condition.  (R. 117).  On March 21, 2002, the agency informed Ms. Dora that it had determined, on initial review, that her disability had ceased as of the beginning of March 2002.  (R. 72, 119).  On April 4, 2002, she requested reconsideration, (R. 123), and submitted additional information, (R. 234, 242).  A meeting or hearing with a disability hearing officer ("DHO") was scheduled for March 25, 2003, but Ms. Dora did not attend.  (R. 128, 247).  On April 18, 2003, the agency informed Ms. Dora that the DHO determined that she had experienced medical improvement, was no longer disabled, and was no longer eligible for benefits after March 1, 2002.  (R. 73, 125, 128, 132, 247).  On April 30, 2003, Ms. Dora requested a hearing before an ALJ, (R. 141), and a hearing was held on March 8, 2004, (R. 926).

Before the hearing, on March 8, 2004, Ms. Dora executed a Waiver of Representation form wherein she stated that she "voluntarily and intelligently" waived her right to be represented at the hearing; that her right to representation had been explained, and that she

---

[12] The transferability of any skills was immaterial.

7

understood that she might qualify for free legal services from community legal-aid organizations. (R. 152, 928).[13]  At the commencement of the hearing, the  ALJ ("ALJ2") advised her that she had a right to representation, that representation could be helpful in developing and presenting her claim, that there were organizations that could provide free or reduced-fee assistance, and that most representatives worked only for a percentage of back pay, if any is awarded.  (R. 928-30).  He asked whether she was aware of the availability of representation and had an opportunity to seek it out, and she replied affirmatively.  (R. 929-30).  He asked if she wanted to proceed and she answered that she did.  (R. 930).  He then accepted her waiver.  (*Id*.)

On April 26, 2004, ALJ2 decided that Ms. Dora's medical condition had sufficiently improved and she was no longer eligible for benefits after March 1, 2002.  (R. 48, 51, 86, 89). At step two, he found that Ms. Dora had the combined severe impairments of a history of cardiomyopathy, non-insulin-dependent diabetes mellitus, hypertension controlled with medications, and obesity.  At step three, he determined that she did not have an impairment or combination of impairments that met or equaled any of the Listings.  He found that her medical condition related to her ability to work had improved since the first ALJ's decision.  He found that her statements about her symptoms and their impact on her ability to work were not credible.  He determined that, as of the benefits-cessation date, she had the exertional and non-exertional RFC to perform a wide range of work at the light exertional level.  (R. 93-94).  At step four, ALJ2 found that this RFC allowed her to perform her past relevant work as a bookkeeper, sales clerk, and cashier.  (R. 94).  Alternatively, at step five, ALJ2 found that, considering Ms.

---

[13] The agency had also sent to her contact information for legal-aid organizations.  (R. 929).

Dora's age (44 years old at the time), education, and transferable skills acquired in her past work, and based on the testimony of a vocational expert and grid rule 202.22 as a guideline, Ms. Dora had not been disabled at any time from March 1, 2002 to the date of decision.  (R. 94-95). There is no record that Ms. Dora pursued an appeal of this determination to SSA's Appeals Council or to federal court.

**Second application.**  Seven months later, in November 2004, Ms. Dora submitted a second application for disability benefits, under the SSI program,[14] alleging an onset date of April 26, 2004, which was the date of ALJ2's decision terminating her previous benefits.  (R. 193).  Her application was denied on initial, (R. 99, 865, 866), and reconsideration review, (R. 100, 158, 871).  The reconsideration denial was issued on May 25, 2005; Ms. Dora filed an appointment-of-counsel form on May 31, 2005, (R. 45); and counsel filed a request for an ALJ hearing on June 1, 2005, (R. 161).  On June 3, 2005, SSA sent a hearing notice to counsel that informed him about the hearing process, advised him to submit any additional evidence to the ALJ as soon as possible, advised him to inform SSA if he needed help doing so, and informed him that he may request the ALJ to issue subpoenas for evidence or testimony.  (R. 164).  On September 17, 2005, SSA sent another hearing notice to counsel, enclosing the exhibit list, and again inviting submission of additional evidence.  (R. 849).  Counsel had already submitted additional evidence in July.  (R. 849, 850).  The hearing was held on March 17, 2006 before an ALJ ("ALJ3") with Ms. Dora, her counsel, one supporting witness, and a vocational expert participating.  (R. 875).

---

[14] Her application was for both DIB and SSI benefits but she dismissed her DIB claim shortly after the hearing.  (R. 33, 35).

On June 6, 2006, ALJ3 issued his denial decision.  (R. 16, 19).  At step two, ALJ3 found that Ms. Dora has the following severe impairments in combination:  obesity, diabetes mellitus, and histories of cardiomyopathy, depression, and anxiety.  (R. 25, 27).  At step three, he found that these impairments did not meet or equal, singly or in combination, any of the Listings.  (R. 31).  He determined that she had the RFC for light work with additional restrictions, which, at step four, prevent her from performing her past relevant work.  (R. 31-32).  Because her exertional limitations prevented her from performing the full range of light work, ALJ3 obtained the testimony of the vocational expert as to the numbers of jobs that she could perform in the national economy.  Considering her age (45 years old at the time of alleged onset), high-school education, and lack of transferable skills, and using grid rule 202.21 as a guideline together with the vocational expert's testimony, ALJ3 concluded that Ms. Dora was not disabled at step five.  (R. 32).  She quickly requested Appeals-Council review.  (R. 13, 16).  Review was denied on January 31, 2008, (R. 10), which rendered the decision of ALJ3 the final decision of the Commissioner on Ms. Dora's second application for disability benefits.

**The present suit.**  On March 24, 2008, Ms. Dora filed her complaint in this cause.[15] (Doc. 1).  It was filed within the sixty-day deadline for seeking judicial review of ALJ3's denial

---

[15] Although all of the described administrative proceedings took place in Kentucky, the Social Security Act provides that a suit seeking judicial review of a final decision of the Commissioner "shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business . . . ."  42 U.S.C. § 405(g).  The Complaint avers that Ms. Dora is a resident of Knightstown, Indiana, Complaint ¶ 3, which is within the Southern District of Indiana.

of her 2004 application for SSI benefits,[16] suggesting that she is challenging that decision. However, her Complaint — far from a model of clarity — states that it is "a civil action for judicial review of the denial by the Defendant . . . of a claim of Plaintiff Joyce J. Dora for disability insurance benefits ("DIB") . . . and Supplemental Security Benefits (SSI) . . . ." Complaint ¶ 1, which suggests that she is appealing both ALJ1's and ALJ3's decisions. (As explained above, Ms. Dora's first (1998) application was only for DIB benefits, and her second (2004) application was only for SSI benefits.) Paragraph eight of the Complaint states that Ms. Dora was receiving "disability and SSI" from 1997 through June 2003, when SSA "terminated her payments." *Id*. ¶ 8. It then states that she "has exhausted all administrative and appellate remedies with respect to this matter," *id.* ¶ 9, and that she "has timely field [*sic*] review requests at each stage of review of the termination of her benefits", *id.* ¶ 10, suggesting that she is also challenging ALJ2's 2004 decision terminating her benefits. But this paragraph continues with statements about the faulty "denial decision," "denials," and "refusal to grant relief," and asserts that the evidence supports "the grant of benefits." *Id.* ¶ 10. The Complaint concludes by requesting that the Court "revers[e] the adverse decision to deny the Plaintiff benefits . . . ." It is not clear from this jumble whether Ms. Dora is challenging ALJ3's denial of her application for SSI benefits, ALJ2's termination of her DIB benefits, or both.

Ms. Dora's brief in support of her Complaint provides no clarification. It begins with the statement that "[t]his case raises the issue of whether a social security recipient may be later

---

[16] "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g).

denied benefits on a grossly incomplete medical file and especially where her condition in 1998 remains substantially the same to this date."  (Brief in Support (doc. 22) at 1).  "Denied benefits" and "to this date" suggests that Ms. Dora's suit challenges ALJ3's denial of her most recent application, but her counsel's terminology has not been precise; he could have meant the "termination" of her benefits, rather than their "denial."  Similar confusion arises with regard to the further statement that "[t]his case also has the issue of whether or not a failure to obtain records of Joyce Dora's medical conditions and diagnoses with great and substantial 'holes' should be grounds for simply reversing the decision denying her benefits."  (*Id.* at 1-2).  If reversal is not granted on this basis, then she asks the Court "to remand this case to reflect the most recent medical evidence" which she attaches to her Brief in Support.  (*Id.* at 2).

Later, Ms. Dora suggests that she is challenging both ALJ2's termination of her DIB benefits and ALJ3's denial of her latest application for SSI benefits:  "[t]he decision denying her continuing benefits for SSA [presumably she means "DIB"] and denying her SSI benefits later after she had been unable to return to work are 'clearly erroneous.'  Where her condition is the same there can be no 'substantial evidence' warranting denying her benefits."  (*Id.* at 5).  She further argues that, "after indicating on her application her doctors, hospitalizations and the like," it was SSA's and the state agency's responsibility to obtain the missing medical records.  (*Id.* at 7).  The only "application" that she made during the 2000 to 2007 time frame relating to the missing records was her latest application for SSI benefits.  She concludes:  "The Court should enter judgment reversing the Commissioner's final decision for a finding of disability and an award of benefits. . . .  Alternatively, the Court should enter judgment reversing the Commissioner's final decision with a remand for a new hearing, i.e. for further administrative

proceedings." (*Id.* at 9).

From these reference in her Complaint and Brief, we assume — guess, really — that Ms. Dora is appealing both ALJ2's decision terminating her DIB benefits and ALJ3's decision denying her application for SSI benefits.

Ms. Dora filed her Brief in Support of the Complaint on December 30, 2008; the Commissioner responded on March 30, 2009; and Ms. Dora declined to file a reply.

**Discussion**

**1. ALJ2's decision terminating DIB benefits.**

Ms. Dora was clear about one thing:

> Perhaps this brief should first mention what is not done here.  Because the record is so incomplete, Joyce Dora does not analyze the case in terms of its five-step sequential evaluation.  20 C.F.R. §404.1520 (2006).  The five step process is found at 20 C.F.R. 404.
>
> Instead the case is discussed in terms of other applicable law.

(Brief in Support at 4).  She thus does not address any aspect of ALJ2's stated analysis or rationale in terminating her DIB benefits.  Rather, her Brief indicates that she asserts three possible arguments:  first, she contends that ALJ2 failed in his duty to properly develop the record by obtaining additional medical records; second, she contends that ALJ2 failed to apply a presumption of continuing disability that a benefits recipient should be afforded; and third, she argues that a remand is warranted in order to permit SSA to consider the additional evidence that she has attached to her brief.  All three arguments are unavailing.

One problem with Ms. Dora's claim is obvious from the start:  this suit was filed in

13

March 2008, four years after ALJ2 issued his April 2004 decision terminating Ms. Dora's DIB benefits; the Social Security Act allows claimants only sixty days in which to file suit seeking judicial review.  42 U.S.C. §§ 405(g) and 1383(c)(3).  The more substantive problem relates to the fact that the Act allows judicial review only of "final decisions" of the Commissioner.  *Id*. Because the Act itself does not define what a "final decision" is, the Commissioner is authorized to define it by regulation, *Weinberger v. Salfi*, 422 U.S. 749, 767 (1975), and the Commissioner has ruled that a final decision is rendered only when a claimant pursues all four stages of administrative review explained above:  initial determination, reconsideration, ALJ hearing, and Appeals Council review.  20 C.F.R. §§ 404.900(a) and 416.1400(a).  These regulations are clear: "If you are dissatisfied with our decision in the review process, but do not take the next step within the stated time period, you will lose your right to further administrative review and your right to judicial review, unless you can show us that there was good cause for your failure to make a timely request for review."  20 C.F.R. §§ 404.900(b) and 416.1400(b).  *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000) ("If a claimant fails to request review from the [Appeals] Council, there is no final decision and, as a result, no judicial review in most cases.  . . .  In administrative-law parlance, such a claimant may not obtain judicial review because he has failed to exhaust administrative remedies."); *Califano v. Sanders*, 430 U.S. 99, 102 (1977).

Ms. Dora has not alleged or otherwise suggested, and there is no evidence of record indicating, that she requested a review by the Appeals Council of the ALJ2's decision.  Neither does she directly allege, suggest, or argue that any exception to exhaustion applies.  *See Weinberger v. Salfi*, 422 U.S. at 764-67; *Matthews v. Eldridge*, 424 U.S. 319, 330-32 (1976). One possible exception implied in her Brief is "futility":  when a claimant asserts a constitutional

14

challenge that is collateral to the issue of benefits eligibility, exhaustion is not required.  *Id*.  Ms. Dora makes one statement, albeit only in passing, which could suggest that she believes that her hearing was not fair:

> It should be remembered that in Joyce Dora's original termination hearing, she was not represented by Counsel who might have been expected to come up with more of the medical record.  In fact the administrative judge in that case pretty much badgered her into waiving her right to counsel with a litany of questions like she should have looked in ads to find a disability lawyer if she really wanted one and would not waive her right to counsel.

(Brief in Support at 7).  As noted above, the record reveals that Ms. Dora executed a Waiver of Representation form before the hearing commenced, (R. 152, 928), and, further, she does not allege that she was coerced or influenced to execute that form.  We have read the transcript of ALJ2's colloquy with Ms. Dora at the start of her hearing and find nothing therein to suggest that she was "badgered" into waiving her right to counsel.  (R. 928-30).  At any rate, Ms. Dora did not claim that her constitutional due process or other rights were violated by ALJ2's alleged "badgering" and she certainly did not develop any legal support for such a claim.

Therefore, because arguments or claims lacking legal and factual development are forfeited, *United States v. Elst*, ___ F.3d ___, 2009 WL 2591619, *6 ("Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991), we find that Ms. Dora has forfeited any argument that an exception to the final-decision/exhaustion-of-remedies rule applies.  Therefore, we do not have jurisdiction to judicially review ALJ2's decision terminating Ms. Dora's DIB benefits.

We note alternatively that, even if an exception to the duty to exhaust administrative

15

remedies were to apply, the lapse of the sixty-day deadline for filing a judicial-review suit still remains.  While not a jurisdictional bar, the sixty-day window still functions as a period of limitations, *Bowen v. City of New York*, 476 U.S. 467, 478 (1986), which deprives Ms. Dora of her cause of action for judicial review absent the applicability of any exceptions or tolling justifications, the existence of which she has not asserted or argued  here and are, therefore, forfeited as well.

## 2.  ALJ3's denial of application for SSI benefits.

We assume that Ms. Dora raises the same arguments against ALJ3's denial of her application for SSI benefits as she did to ALJ2's termination of benefits:  first, ALJ3 failed in his duty to properly develop the record by obtaining additional medical records (at least the records attached to her brief); second, ALJ3 failed to apply a presumption of continuing disability; and third, a remand is warranted in order to permit SSA to consider the additional evidence that she attached to her brief.

Although Ms. Dora commenced her second application for benefits *pro se*, counsel's appointment was filed six days after the state agency's reconsideration denial and almost ten months before the ALJ hearing was held.  Following counsel's appearance, SSA issued at least two pre-hearing notices that solicited additional evidence and counsel did, in fact, submit some additional evidence before the hearing.  Thus, there was ample opportunity for Ms. Dora and her counsel to have retrieved and submitted any additional evidence that they believed might have supported her claim for benefits.  Although an ALJ has a duty to develop the record, "[w]hen an applicant is represented by counsel the administrative law judge is entitled to assume that the

applicant is making his strongest case for benefits." *Glenn v. Secretary of Health and Human Services*, 814 F.2d 387, 391 (7th Cir. 1987). *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007) ("a claimant represented by counsel is presumed to have made his best case before the ALJ"). Therefore, ALJ3 did not fail in his duty to ensure a developed record.

Ms. Dora next argues that ALJ3 erred by not applying a presumption of disability when the evidence shows that she is in the same condition that she was in when ALJ1 found her disabled. She relies on *Kuzmin v. Schweiker*, 714 F.2d 1233, 1237 (3rd Cir. 1983), and *Turner v. Heckler*, 592 F.Supp. 599, 607 (N.D. Ind. 1984), but both cases applied administrative presumptions in termination proceedings, not independent applications for disability. In her argument, Ms. Dora elides the fact that her current application is a new, independent application, with a new onset date, and that ALJ2's now-unreviewable termination decision intervenes between it and ALJ1's finding of disability, breaking any presumptive inference of disability. Moreover, the evidence on which Ms. Dora relies as demonstrating her current consistent disabling condition is the allegedly new evidence that is not a part of the administrative record and for which she seeks a remand, to which issue we next turn. ALJ3 did not err by failing to apply a presumption of disability.

Finally, Ms. Dora requests a remand to the Commissioner so that he may consider the impact of the 233 pages of medical records that she attached to her Brief that aren't part of any of her three administrative records. Pursuant to the sixth sentence of 42 U.S.C. § 405(g), "[t]he court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that

17

there is good cause for the failure to incorporate such evidence into the record in a prior

proceeding . . . ."

> Evidence is "new" if it was "not in existence or available to the claimant at the
> time of the administrative proceeding."  New evidence is "material" if there is a
> "reasonable probability" that the ALJ would have reached a different conclusion
> had the evidence been considered.  Thus, new evidence is material only if it is
> relevant to the claimant's condition "during the relevant time period encompassed
> by the disability application under review."

*Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005) (citations omitted).  "[M]edical records

'post-dating the hearing' and that 'speak only to [the applicant's] current condition, not to his

condition at the time his application was under consideration by the Social Security

Administration' do not meet he standard for new and material evidence."  *Id.* at 742.  *See Getch*

*v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008) (evidence that post-dates the ALJ's decision is

material only if it "speaks to the patient's condition at or before the time of the administrative

hearing").   It is a claimant's burden to show justification for a remand.  *See Waite v. Bowen*, 819

F.2d 1356, 1361 (7th Cir. 1987).

Of the 233 pages of medical records that Ms. Dora attached to her brief, the vast majority

of them, 165 pages, were generated before her alleged onset date of April 26, 2004 and before

she filed her second application for benefits; 39 pages were generated after her alleged onset date

but before the ALJ's decision; and 29 pages were generated after the ALJ's decision but before

the Appeals Council's ruling on her request for review.  None of the medical records post-date

issuance of the Appeals Council's decision.  In fact, the most recent records — the 13 pages of

reports from Major Hospital in Shelbyville, Indiana (doc. 22-2) — were generated in June 2007,

a full eighteen months before issuance of the Appeals Council's decision.  Therefore, none of the

additional evidence is "new" in the sense of "not in existence . . . at the time of the administrative proceeding" and Ms. Dora made no showing that, even if not new, they were unavailable to her at the time of the administrative proceeding.

Ms. Dora has made no showing of good cause for "fail[ing] to incorporate such evidence into the record in a prior proceeding."  Her only statement regarding good cause is:  "Good cause for the new evidence showing she still has the same condition she had in 1998 comes from a hospitalization at Major Hospital after the last hearing."  (Brief in Support at 9).  She does not attempt any excuse for the rest of the records.  It appears likely that her excuse regarding the Major Hospital records from 2007 is that, because they are of a hospitalization that occurred after the ALJ hearing, she could not have submitted them earlier.  But she still had one and one-half years to submit them to the Appeals Council before its decision.  The Appeals Council is required to consider new and material evidence that is submitted to it that relates to a claimant's condition on or before the issuance of the ALJ's decision, evaluate that evidence and the record as a whole, and then review the claimant's case if it finds that the ALJ's decision is against the weight of all of the evidence.  20 C.F.R. § 404.970(b).  Ms. Dora did nothing to place the 2007 Major Hospital records before the Appeals Council and she did nothing to submit the earlier evidence into the record before the ALJ.  After her counsel entered his appearance, Ms. Dora had ten months before the hearing to obtain and submit the earlier evidence, another two and one-half months to submit them to ALJ3 before his decision, and, again, another eighteen months to submit them to the Appeals Council.  On July 10, 2006, days after ALJ3's decision, counsel submitted a letter to the Appeals Council informing it of Ms. Dora's request for review and advising it that "Ms. Dora intends to submit additional medical evidence in support of her

claim." (R. 15).  Although the record before the Appeals Council was open for another eighteen

months, Ms. Dora did not submit the additional evidence.  She has not shown that the additional

evidence attached to her Brief warrants a remand to the SSA under 42 U.S.C. § 405(g).

**Conclusion**

Ms. Dora has not shown any basis to reverse the Commissioner's decisions regarding her

eligibility for disability benefits.  While her medical condition and resulting functional capacity

might have worsened since the conclusion of the administrative proceedings, the Court is as

bound by the governing statutes, regulations, and rules as she and the Social Security

Administration are.  If her condition has indeed worsened to the extent that she is disabled under

the Act, she has the opportunity to submit a new application for benefits, supported by the

medical records for which she sought a remand in this case.

Date:  09/22/2009

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Thomas E. Kieper, United States Attorney's Office
tom.kieper@usdoj.gov

Thomas E. Williams
teqw@aol.com